1  Joel E. Tasca, Esq.
   Nevada Bar No. 14124
2  Lindsay C. Demaree, Esq.
   Nevada Bar No. 11949
3  Stacy H. Rubin, Esq.
   Nevada Bar No. 9298
4  BALLARD SPAHR LLP
   1980 Festival Plaza Drive, Suite 900
5  Las Vegas, Nevada 89135
   Telephone: (702) 471-7000
6  Facsimile: (702) 471-7070
   tasca@ballardspahr.com
7  demareel@ballardspahr.com
   rubins@ballardspahr.com
8
   *Attorneys for Defendant*
9

10                    UNITED STATES DISTRICT COURT

11                          DISTRICT OF NEVADA

12 | CHARLES SINGER,                  | Case No. 2:17-cv-01115-GMN-VCF
13 |                  Plaintiff,      |
   |                                  | **DEFENDANT'S MOTION TO STAY**
14 | vs.                              | **PENDING A RULING BY THE**
   |                                  | **FEDERAL COMMUNICATIONS**
15 | LAS VEGAS ATHLETIC CLUBS,        | **COMMISSION ON TCPA ISSUES**
   |                                  | **DISPUTED IN THIS CASE**
16 |                  Defendant.      |

17

18      Defendant Las Vegas Athletic Clubs ("LVAC"), by and through its counsel of

19 record, Ballard Spahr LLP, respectfully moves this Court for a stay of this action

20 pending the Federal Communications Commission's ruling on the definition of

21 "automatic telephone dialing system" ("ATDS") under the federal Telephone

22 Consumer Protection Act ("TCPA").

23 I.   **INTRODUCTION**

24      The past several months have seen conflicting developments in TCPA law as

25 to whether a "predictive dialer" that makes calls from a database of preexisting

26 phone numbers – like the equipment used by LVAC to make the calls at issue in

27 this case – constitutes an ATDS. Although the Ninth Circuit recently decided this

28 issue in *Marks v. Crunch San Diego, LLC*, ___ F.3d ___, 2018 U.S. App. LEXIS

DMWEST #18157476 v4

26883 (9th Cir. 2018), the issue is not settled because the Federal Communications Commission (the "FCC") is poised to issue its own ruling on the topic. Under the Hobbs Act, the FCC's anticipated ruling on the ATDS definition, if it conflicts with the Ninth Circuit's *Marks* decision, will effectively overrule *Marks*.

Under the "primary jurisdiction" doctrine, a court may stay a case to allow an administrative agency with subject matter expertise to rule on an issue within its purview. Here, the Court should invoke this doctrine to permit the FCC – the agency charged by Congress to interpret the TCPA – to issue its ruling on the precise question at issue in this case.

In addition, a stay based on the Court's inherent authority to control its own docket warrants a stay. A critical issue in this case is whether LVAC's predictive dialing equipment constituted an ATDS. The FCC's ruling on this issue is expected soon, and so a stay pending the ruling would not work significant hardship on Plaintiff. On the other hand, proceeding through summary judgment and trial, only to have the relevant ATDS law potentially change upon the FCC's issuance of its ruling, would cause substantial hardship on not only LVAC, but also Plaintiff and the Court, by wasting the time and resources of all involved. In addition, waiting for the FCC's ruling could substantially simplify the issues in this matter – it will provide *the* controlling guidance on whether a predictive dialer may constitute an ATDS. Moreover, if the FCC decides that a predictive dialer is *not* an ATDS, Plaintiff's TCPA claims will fail as a matter of law, and this litigation will be over.

## II.   CASE BACKGROUND

Plaintiff Charles Singer ("Plaintiff") filed suit against LVAC, alleging claims for negligent and willful violations of the TCPA, and an intrusion upon seclusion claim. (*See* Complaint, ECF No. 1). Plaintiff alleges – and he must establish to prevail on his TCPA claims – that LVAC used an ATDS to place calls to him.

Earlier this year, the parties filed competing summary judgment motions,

2

including on the issue of whether LVAC's dialing equipment was an ATDS.[1] *See* LVAC's Motion for Summary Judgment (ECF No. 24), Plaintiff's Opposition to LVAC's Motion for Summary Judgment (ECF No. 29), and LVAC's Reply in support thereof (ECF No. 33); Plaintiff's Motion for Summary Judgment (ECF No. 23), LVAC's Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 28), and Plaintiff's Reply in support thereof (ECF No. 32).

### III. THE STATUTORY AND REGULATORY LANDSCAPE

#### A. The Statutory Text of the TCPA

Congress passed the TCPA in 1991 in response to consumer outrage "over the proliferation of intrusive, nuisance calls to their homes from telemarketers." *ACA International v. Federal Communications Commission*, 885 F.3d 687, 692 (D.C. Cir. 2018) (quoting 47 U.S.C. § 227 note, Pub. L. No. 102-243, § 2(1), 105 Stat. 2394, 2394). The TCPA restricts, among other things, using an ATDS to place certain telephone calls. The statute provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States -
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [ATDS] or an artificial or prerecorded voice -
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A). The statute defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator . . . [and] to dial such numbers." 47 U.S.C. § 227(a)(1).

---

[1] As an additional ground for summary judgment, LVAC also explained that Plaintiff admits that he provided his prior express consent to be called as part of his LVAC membership agreement, and that Plaintiff was legally unable to unilaterally revoke that consent because it was provided as part of a contract. *See* LVAC's Motion for Summary Judgment (ECF No. 24) at IV(A)(2)(i) and (ii).

Ballard Spahr LLP
1980 Festival Plaza Dr., Suite 900
Las Vegas, Nevada 89135-2958
(702) 471-7000

3

### B. The FCC's Rulings

Congress specifically instructed the FCC to prescribe rules and regulations to implement certain aspects of the TCPA. 47 U.S.C. § 227(b)(2). Since 1992, the FCC has issued a number of regulations and declaratory rulings addressing the interpretation and scope of the TCPA. In 2003, the FCC concluded that predictive dialers that dial from a set list of telephone numbers constitute an ATDS. *See* In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991 ("2003 Order"), 18 FCC Rcd. 14014, 14091-93 (2003). The FCC subsequently determined that a "predictive dialer falls within the meaning and definition of auto dialer and the intent of Congress." *See* In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991 ("2008 Declaratory Ruling"), 23 FCC Rcd. 559, 566 (2008). In 2015, the FCC addressed the definition of an ATDS and issued a declaratory ruling "that predictive dialers . . . satisfy the TCPA's definition of 'auto dialer.'" *See* In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991 ("2015 Declaratory Ruling"), 30 FCC Rcd. 7961, 7972 (2015).

### C. The D.C. Circuit's *ACA International* Opinion

The 2015 FCC Ruling prompted a wave of appeals challenging various aspects of the decision, including the FCC's expanded definition of ATDS. These appeals were consolidated in the U.S. Court of Appeals for the District of Columbia Circuit, which issued its opinion in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018) on March 16, 2018. In *ACA International*, the D.C. Circuit invalidated the 2015 Declaratory Ruling's inclusion of a predictive dialer within the ATDS definition. *Id.* at 695.[2]

---

[2] Courts are currently split as to whether *ACA International* vacated only the 2015 Declaratory Ruling, or if it also invalidated the 2003 Order and 2008 Declaratory Ruling. *See, e.g., Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 935 (N.D. Ill. July 26, 2018) ("*ACA International* necessarily invalidated the 2003 Order and 2008 Declaratory Ruling insofar as they provide, as did the 2015 Declaratory Ruling, that a predictive dialer qualifies as an ATDS . . ."); *Maddox v. CBE Grp., Inc.*, Case No. 1:17-CV-1909-SCJ, 2018 U.S. Dist. LEXIS 88568, at *11, 2018 WL 2327037 (N.D. Ga. May 22,

4

### D. The FCC's Initial Request for Comment

Following the *ACA International* decision, the FCC issued a Public Notice on May 14, 2018, seeking comment on interpretation and implementation regarding the definition of an ATDS, including whether ATDS encompasses equipment – like many predictive dialers – that cannot itself generate and dial random or sequential phone numbers. The deadline to file comments expired on June 28, 2018. (*See* FCC May 14, 2018 Public Notice, CG Docket Nos. 18-152 and 02-278, incorporated herein by reference and attached hereto as Exhibit A; *see also* 83 Fed. Reg. 26,284 (June 6, 2018)).

### E. The Decision in *Marks v. Crunch San Diego, LLC*

On September 20, 2018, the Ninth Circuit issued its decision in *Marks v. Crunch San Diego, LLC,* ___ F.3d ___, 2018 U.S. App. LEXIS 26883 (9th Cir. Sep. 20, 2018). The panel determined that ""[b]ecause the D.C. Circuit vacated the FCC's interpretation of what sort of device qualified as an ATDS, only the statutory definition of ATDS as set forth by Congress in 1991 remains." *Id.* at *20. The Court then proceeded to conclude that the relevant statutory language was ambiguous, but that context and the overall scheme of the TCPA nonetheless lead to the conclusion that ATDS includes predictive dialers. *Id.*, at *25-26.

### F. The FCC's Subsequent Request for Comment

On October 3, 2018, the FCC – in specific response to the *Marks* decision – requested public comment on what constitutes an ATDS. (*See* FCC October 3, 2018 Public Notice, CG Docket Nos. 18-152 and 02-278, incorporated herein by reference and attached hereto as Exhibit B). Therefore, the FCC sought comment to

---

> 2018) ("Given the *ACA Int'l* decision, the Court relies on the FCC's 2003 interpretation of § 227(a)(1) to determine if Defendant's system qualifies as an ATDS."); *Herrick v. GoDaddy.com LLC*, Case No. CV-16-00254-PHX-DJH, 2018 U.S. Dist. LEXIS 83744, at *18-20, 2018 WL 2229131 (D. Ariz. May 14, 2018) (finding that *ACA International* vacated all of the FCC's prior ATDS rulings).

Ballard Spahr LLP
1980 Festival Plaza Dr., Suite 900
Las Vegas, Nevada 89135-2958
(702) 471-7000

5

1 supplement the record developed in response to the previous public notice to include
2 the following issues:

> 1. How to interpret and apply the statutory definition of an ATDS, including the phrase "using a random or sequential number generator"?
>
> 2. Does any device with the capacity to dial stored numbers automatically qualify as an automatic telephone dialing system?
>
> 3. What devices have the capacity to store numbers? Do smartphones have such capacity?
>
> 4. What devices that can store numbers also have the capacity to automatically dial such numbers? Do smartphones have such capacity?
>
> 5. How should the FCC reconcile the decisions issued in *ACA International* and *Marks*?

*See* FCC October 3, 2018 Public Notice, attached hereto as Exhibit B.

The deadline to file comments expired on October 24, 2018, and thus, the FCC's answers to these questions would appear to be imminent.

### IV. THE COURT SHOULD STAY THIS CASE PENDING THE FCC'S RULING
#### A. A Stay Is Warranted Under The Primary Jurisdiction Doctrine Even After The Ninth Circuit's *Marks* Decision

The Court should stay this case pending the FCC's ruling based on the primary jurisdiction doctrine. "Primary jurisdiction is not a doctrine that implicates the subject matter jurisdiction of the federal courts. Rather, it is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002); *accord Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ("[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch."). To determine whether to apply the primary jurisdiction doctrine to stay a

6

case, the court should consider four factors: "'(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Syntek*, 307 F.3d at 781).

Federal courts across the country have applied the primary jurisdiction doctrine to stay cases pending the FCC's rulings on TCPA issues. *See, e.g.*, *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 468 (6th Cir. 2010) (applying primary jurisdiction doctrine to allow FCC to interpret several terms used in the TCPA and corresponding regulations and implicated in pending appeal); *Gensel v. Performant Techs., Inc.*, 13-C-1196, 2015 U.S. Dist. LEXIS 9736, at * 6, 2015 WL 402840 (E.D. Wis. Jan. 28, 2015) ("In sum, a stay of these proceedings under the primary jurisdiction doctrine will promote uniformity in the administration of the TCPA. Instead of furthering a split of authority regarding the issues presented by Gensel's complaint, it is more efficient to simply wait for the FCC to do what it has already been asked to do."); *Passero v. Diversified Consultants, Inc.*, 13-CV-338C, 2014 U.S. Dist. LEXIS 72748, at * 8, 2014 WL 2257185 (W.D.N.Y. May 28, 2014) (granting motion to stay pending FCC ruling addressing the TCPA's scope and definition of ATDS); *Higgenbotham v. Diversified Consultants, Inc.*, 13-2624-JTM, 2014 U.S. Dist. LEXIS 65915, at *12, 2014 WL 1930885 (D. Kan. May 14, 2014) (same); *Hurrle v. Real Time Resolutions, Inc.*, C13-5765 BHS, 2014 U.S. Dist. LEXIS 22204, at *4, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014) (granting motion to stay pending FCC's consideration of TCPA's scope and ATDS definition); *Mendoza v. UnitedHealth Group Inc.*, 13-1553 PJH, 2014 U.S. Dist. LEXIS 1616, at *7, 2014 WL 722031 (N.D. Cal. Jan. 6, 2014) (same).

Here, too, the primary jurisdiction factors demonstrate that the FCC – the agency that Congress specifically authorized to construe the TCPA – should

7

determine what type of telephone equipment qualifies as an ATDS before this Court attempts to do so.

### 1. This case requires the Court to decide what constitutes an ATDS

This case satisfies the first primary jurisdiction factor because Plaintiff seeks to hold LVAC liable for TCPA violations based on LVAC's purported use of an ATDS. The operative complaint asserts that LVAC knowingly and/or willfully violated the TCPA by contacting Plaintiff "using an automatic telephone dialing system . . . ." *See* Compl., ECF No. 1, ¶25(b). LVAC disputes that it used telephone dialing equipment that satisfies the definition of an ATDS. Accordingly, this lawsuit requires the Court to determine what constitutes an ATDS.

### 2. The ATDS issue falls squarely in the FCC's regulatory powers

This case satisfies the second primary jurisdiction factor because the ATDS issue "fits squarely within" Congress's delegation of TCPA rulemaking authority to the FCC. *See Time Warner Cable*, 523 F.3d at 1115.

Despite the *Marks* decision, the FCC's anticipated ruling will be binding on this Court, and if it conflicts with *Marks*, it will effectively overrule *Marks*. This is because the FCC's ability to issue orders interpreting the TCPA are binding in district and circuit courts. *See* 28 U.S.C. § 2342. Specifically, judicial review of FCC orders is governed by section 402 of the Communications Act. Section 402(a) of the Communications Act, in turn, provides that a proceeding to set aside an FCC order must be brought under the Administrative Orders Review Act (also known as the Hobbs Act). Under the Hobbs Act, a petition brought in the first instance in a federal circuit court is the sole way to challenge an FCC order. *See* 28 U.S.C. § 2342.

The Ninth Circuit, as well as district courts therein, have interpreted this regime for review of FCC orders to mean that the Hobbs Act divests federal courts – both district and appellate – of jurisdiction in private litigation to accept any position that would conflict with an FCC ruling. *Pacific Bell Telephone Co. v.*

Ballard Spahr LLP
1980 Festival Plaza Dr., Suite 900
Las Vegas, Nevada 89135-2958
(702) 471-7000

1 *California Public Utilities Com'n*, 621 F.3d 836, 843 n.10 (9th Cir. 2010) (finding
2 that under Hobbs Act, Ninth Circuit cannot consider validity of FCC order,
3 reasoning: "[t]he Hobbs Act requires that all challenges to the validity of final
4 orders of the FCC be brought by original petition in a court of appeals . . . ***[t]he***
5 ***district court thus lacked jurisdiction to pass on the validity of the FCC regulations***"
6 (emphasis added), citing *U.S. West Communications, Inc. v. Jennings*, 304 F.3d 950,
7 958 n.2 (9th Cir. 2002)); *Baird v. Sabre Inc.,* 995 F. Supp. 2d 1100, 1104 (C.D. Cal.
8 2014) (rejecting argument that Ninth Circuit decision on interpretation of TCPA
9 should be followed over FCC interpretation, reasoning: "even if the Ninth Circuit's
10 reference in *Satterfield* to the dictionary definition of "express consent" was
11 intended to express disagreement with the FCC's interpretation, ***the Ninth Circuit***
12 ***had no power to reject the FCC rule in the course of an appeal from a judgment***
13 ***denying a TCPA claim***" (emphasis added), citing *U.S. West Communications, Inc. v.*
14 *Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000)); *Booth v. Appstack, Inc.,* Case No.
15 C13-1533JLR, 2016 U.S. Dist. LEXIS 83996, at * 16, 2016 WL 3620798 (W.D. Wa.
16 Jun. 28, 2016) (holding that interlocutory appeal of district court order interpreting
17 TCPA would not materially advance ultimate termination of litigation, reasoning:
18 "to the extent an FCC ruling controls [the] issue, Defendants have not followed the
19 procedural prerequisites under the Hobbs Act that are required 'to enjoin, set aside,
20 annul, or suspend' an FCC order . . . ***[t]he Ninth Circuit therefore lacks the***
21 ***authority in this case to overturn the 2008 FCC Declaratory Ruling or the 2015***
22 ***FCC Declaratory Ruling.***") (emphasis added).

23 Even if the FCC's anticipated ruling were entitled only to *Chevron* deference,
24 the Ninth Circuit in *Marks* reached its holding only after finding that the relevant
25 language of the TCPA was "ambiguous." *Marks*, ___ F.3d ___, 2018 U.S. App.
26 LEXIS 26883, at *23. The *Marks* court's resolution of that alleged ambiguous
27 language would therefore be trumped by a subsequent FCC interpretation of the
28 same language. *National Cable & Telecomms Ass'n v. Brand X Internet Servs.*, 545

9

U.S. 967, 982 (2005) (holding that Ninth Circuit erred by following its own prior precedent interpreting statute over subsequent FCC interpretation of same statute, explaining: "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute. . . ."). Under this reasoning as well, this Court would be bound to follow the FCC's ATDS interpretation in the event it conflicts with the *Marks* court's interpretation.

### 3.  The ATDS issue is part of a comprehensive regulatory scheme

This case satisfies the third primary jurisdiction factor because the TCPA subjects phone call activity to comprehensive FCC regulation. By its plain terms, the TCPA subjects "any person" that makes "any call" to various prohibitions. 47 U.S.C. § 227(b)(1). And, as discussed in the preceding section, Congress delegated authority to implement this all-encompassing statute to the FCC. *See* Section IV.A.2, above.

### 4.  The TCPA requires expertise and uniformity in administration

The fourth primary jurisdiction factor is satisfied because the TCPA requires the FCC's expertise and uniformity in administration. *See Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1090 (9th Cir. 2006) ("It is precisely the purpose of the primary jurisdiction doctrine to avoid the possibility of conflicting rulings by courts and agencies concerning issues within the agency's special competence."); *Gusman v. Comcast Corp.*, Case No. 13-cv-1049-GPC(DHB), 2014 U.S. Dist. LEXIS 69918, at *7, 2014 WL 2115472 (S.D. Cal. May 21, 2014) ("The FCC has regulatory authority that subjects the industry to a comprehensive regulatory scheme ***that requires expertise or uniformity in administration***." (emphasis added; internal quotations omitted)). The FCC, "no surprise, is familiar with the regulations *it* prescribed and possesses expertise over the statute *it* implements, whether that expertise comes in the form of technical experts, agency lawyers or agency staff in a position to obtain

1 input from the relevant stakeholders." *Accord Charvat*, 630 F.3d at 467 (internal
2 citations omitted; emphasis in original).[3]

### B. Fairness and Efficiency Also Warrant a *Landis* Stay

Separate and apart from the primary jurisdiction doctrine, the interests of fairness and efficiency also warrant a stay in this case in light of the FCC's anticipated ruling. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for its litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Stephens v. Comenity, LLC,* 287 F. Supp. 3d 1091, 1096 (D. Nev. 2017) (granting a *Landis* stay). In determining whether to exercise its discretion to stay a case as permitted by *Landis*, a district court should weigh "the competing interests which will be affected by the granting or refusal to grant a stay," including "[1] possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (internal quotation omitted); *Stephens*, 287 F. Supp. 3d at 1097. Each of these interests favors a stay in this case.

#### 1. Minimal, if any, damage would result from a stay

The only conceivable harm that Plaintiff could experience from a stay is temporary delay in pursuing his requested relief. Delay in obtaining money damages, however, does not constitute sufficient prejudice for purposes of the stay analysis. *See Doerken v. USAA Savs. Bank*, CV 16-08824-RSWL-MRW, 2017 U.S.

---

[3] "The court agrees with defendant that the statutory reference to 'capacity' is unclear. The seminal question of its reach is a technical one, which falls in the ambit of the FCC's administrative expertise. . . . It is proper for the FCC to make this determination in the first instance, such that uniformity and consistency in the application of the TCPA can be accomplished." *Higgenbotham*, 2014 WL 1930885, at *3.

11

1 Dist. LEXIS 63474, at *4, 2017 WL 1534186 (C.D. Cal. Apr. 26, 2017) (granting stay
2 and observing that "courts have held that there is no likelihood of damage or harm
3 to the non-moving party merely because a stay could cause a delay to the plaintiff in
4 seeking money damages"); *Reynolds v. Geico Corp.*, Case No. 2:16-cv-01940-SU,
5 2017 U.S. Dist. LEXIS 28867, at *15, 2017 WL 815238 (D. Or. Mar. 1, 2017) (same).

6 Imposing a stay would last only until the FCC issues its ruling, which is
7 forthcoming given that the deadline for public comment, including reply comments,
8 expired on October 24, 2018. (*See* FCC October 3, 2018 Public Notice). Plaintiff
9 would therefor suffer minimal harm, if any, from a stay of this case.

### 2. LVAC will suffer significant hardship without a stay

11 In the absence of a stay, LVAC would be required to spend significant time
12 and resources defending this lawsuit, even though the FCC's ruling on the ATDS
13 issue could dispose of a significant portion of Plaintiff's claims. The parties each
14 face the prospect of costly preparations for trial on the ATDS issue. Yet the FCC's
15 imminent ATDS ruling could significantly limit, if not eliminate, the need for the
16 parties to expend such resources. Courts considering stays in TCPA cases have held
17 that unnecessary expenses by a defendant constitute hardship to warrant a stay.
18 *See, e.g., Washington v. Six Continents Hotels, Inc.*, Case No. 2:16-cv-03719-ODW
19 (JEMx), 2017 U.S. Dist. LEXIS 3670, at *6, 2017 WL 111913 (C.D. Cal. Jan. 9,
20 2017) ("[I]f the Court denies the stay and requires the parties to go forward with
21 this action, they will be forced to spend time and money . . . on a critical issue of
22 liability without knowing what law will ultimately apply at summary judgment or
23 at trial – a fool's errand, to say the least."). The same reasoning applies here.

### 3. A stay will simplify issues, proof, and questions of law

25 Allowing the FCC to rule on the type of dialing equipment that qualifies as
26 an ATDS will streamline the issues in this case. As discussed above, the parties
27 dispute whether LVAC used an ATDS to call Plaintiff. Unsurprisingly, when faced
28 with the analogous decision to stay litigation pending a ruling on the ATDS issue in

12

*ACA International*, numerous district courts within this Circuit concluded that a stay was appropriate because "the definition of an ATDS is a threshold issue for liability" and "a stay will conserve judicial resources, clarify the law, and aid the court in making a decision on the merits." *Coulter v. Ascent Mortgage Resource Group LLC*, No. 2:16-cv-02237-SB, 2017 U.S. Dist. LEXIS 76012, at *10, 2017 WL 2219040 (E.D. Cal. May 18, 2017).[4]  Their rationale applies with equal force in this case, which involves the same "threshold" ATDS issue.

As discussed above, the FCC's anticipated ruling will supplant *Marks* if the two rulings conflict.  Waiting a short time for the FCC to rule on what type of dialing equipment constitutes an ATDS will allow the parties to litigate – and the Court to rule – with knowledge of the applicable law.  To avoid such an inefficient use of resources, the Court should exercise its discretion and grant this request for a *Landis* stay pending the FCC's ruling.

[*Remainder of page intentionally left blank*]

---

[4] *See also Brickman v. Facebook*, Case No. 16-cv-00751-TEH, 2017 U.S. Dist. LEXIS 64343, at *14, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ("[T]he Court believes the resolution of *ACA International* may streamline the proceedings and promote judicial economy by simplifying the issues in this case"); *Gage v. Cox Commc'ns, Inc.*, Case No.: 2:16-cv-02708-KJD-GWF, 2017 U.S. Dist. LEXIS 63816, at * 4, 2017 WL 1536220 (D. Nev. Apr. 26, 2017) (finding that a stay "will permit the parties to evaluate, and the Court to consider, viability of the claims under the most complete precedent.  This will simplify and streamline proceedings and promote the efficient use of the parties' and the Court's resources."); *Doerken*, 2017 U.S. Dist. LEXIS 63474, at *8, 2017 WL 1534186 ("In *ACA*, the D.C. Circuit will address, among other things, what type of equipment constitutes an ATDS.  Because Plaintiff must prove that Defendant called him using an ATDS to establish a TCPA claim, the definition of an ATDS is indispensable in this litigation.").

## V. CONCLUSION

For these reasons, LVAC respectfully requests that this Court stay the instant matter pending the FCC's forthcoming ruling interpreting the definition of an ATDS.

Dated this 9th day of November, 2018.

BALLARD SPAHR LLP

By: /s/ Stacy H. Rubin
Joel E. Tasca
Nevada Bar No. 14124
Lindsay C. Demaree
Nevada Bar No. 11949
Stacy H. Rubin, Esq.
Nevada Bar No. 9298
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
*Attorneys for Defendant*

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of November, 2018, and pursuant to Federal Rule of Civil Procedure 5(b), a true and correct copy of the foregoing **DEFENDANT'S MOTION TO STAY PENDING A RULING BY THE FEDERAL COMMUNICATIONS COMMISSION ON TCPA ISSUES DISPUTED IN THIS CASE** was served by the Court's CM/ECF system on all parties who have appeared in this action.

Steven A. Alpert, Esq.
PRICE LAW GROUP, APC
420 South Jones Boulevard
Las Vegas, NV 89107

Tarek Chami, Esq.
PRICE LAW GROUP, APC
16030 Michigan Avenue, Suite 215
Dearborn, Michigan 48126

*Attorneys for Plaintiff Charles Singer*

/s/ Sarah H. Walton
An Employee of Ballard Spahr LLP

15